**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SOURCE, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2-05-CV-364 (TJW) |
| | § | |
| AMERICAN EXPRESS CO., | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

After considering the submissions and the arguments of counsel, the court issues the following order concerning the claim construction issues:

**I.      Introduction**

Plaintiff Source, Inc. accuses Defendant American Express Co. of infringing United States Patent No. Re. 36,116 ("the '116 patent") entitled "Centralized Consumer Cash Value Accumulation System for Multiple Merchants."  The plaintiff alleges that the defendant infringes Claims 14, 15, 17, 19-23, 25, 26, 28, 30, 31, 33, and 34 of the '116 patent.[1]  This opinion resolves the parties' various claim construction disputes.

**II.     Background of the Technology**

In general, the '116 patent discloses a method and system for accumulating cash value based on point-of-sale transactions between participating consumers and merchants.  During a point-of-sale transaction, information, including the credit value of the transaction, is transmitted to a central location.  The consumer's account at the central location is then incremented by the credit value.

---

[1]      The applicant originally filed a patent application which resulted in U.S. Patent No. 4,941,090 ("the '090 patent").  U.S. Patent No. 5, 287,286 ("the '286 patent") is the result of a continuation-in-part application from the original application and two subsequent continuation applications.  The '116 patent, at issue in this opinion, is a reissue of the '286 patent.

The merchants are periodically billed for the accumulated value.  Also, consumers may be given

selective access to their respective cash values by either a funds dispensing terminal or a check.

III.     **General Principles Governing Claim Construction**

"A claim in a patent provides the metes and bounds of the right which the patent confers on

the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc.*

*v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction is an

issue of law for the court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71

(Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the

specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  Under the patent law, the

specification must contain a written description of the invention that enables one of ordinary skill

in the art to make and use the invention.  A patent's claims must be read in view of the specification,

of which they are a part.  *Id*.  For claim construction purposes, the description may act as a sort of

dictionary, which explains the invention and may define terms used in the claims.  *Id*.  "One purpose

for examining the specification is to determine if the patentee has limited the scope of the claims."

*Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of

the patentee's claims.  Otherwise, there would be no need for claims.  *SRI Int'l v. Matsushita Elec.*

*Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own

lexicographer, but any special definition given to a word must be clearly set forth in the

specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although

the specification may indicate that certain embodiments are preferred, particular embodiments

appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (emphasis added) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id.*

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (*quoting Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or

3

ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation.  The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317.  Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings.  *Id*.  Nevertheless, the prosecution history is intrinsic evidence.  That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through

dictionaries or otherwise) before resorting to the specification for certain limited purposes.  *Id.* at
1319-24.   The approach suggested by *Texas Digital*–the assignment of a limited role to the
specification–was rejected as inconsistent with decisions holding the specification to be the best
guide to the meaning of a disputed term.  *Id.* at 1320-21.   According to *Phillips*, reliance on
dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on
the abstract meaning of words rather than on the meaning of the claim terms within the context of
the patent."  *Id.* at 1321.  *Phillips* emphasized that the patent system is based on the proposition that
the claims cover only the invented subject matter.  *Id.*  What is described in the claims flows from
the statutory requirement imposed on the patentee to describe and particularly claim what he or she
has invented.  *Id.*  The definitions found in dictionaries, however, often flow from the editors'
objective of assembling all of the possible definitions for a word.  *Id.* at 1321-22.

Phillips does not preclude all use of dictionaries in claim construction proceedings.  Instead,
the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court
emphasized that claim construction issues are not resolved by any magic formula.  The court did not
impose any particular sequence of steps for a court to follow when it considers disputed claim
language.  *Id.* at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to
the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general
rule that the claims measure the scope of the patent grant.  Bearing these principles in mind, the court
now turns to a discussion of the relevant claim terms.

IV.    **Discussion**

Claim 14 of the '116 patent is a representative, independent claim.  It provides:

A method of consumer cash value accumulation based upon point-of-sale transactions, each

having a purchase amount, between consumers and multiple merchants, the method comprising:

    a.    at the point-of-sale, obtaining from the consumer an account number unique to the consumer;

    b.    determining a merchant-specific credit value for the transaction from a merchant-specific credit rate and the purchase amount;

    c.    electronically providing, for each transaction, at an electronic processing system the consumer's account number and the credit value; and

    d.    for each transaction, accumulating, at the electronic processing system, cash value in a consumer account associated with that consumer's account number by increasing the cash value in that consumer account in relation to the credit value.

## A.    Agreed Constructions

The parties have stipulated to the construction of the following terms:

"Electronic processing system" means "a system in which data or information is processed electronically."

"Central location" means "a location that is different from a merchant location."

"Electronically determine" means "determine via the use of an electronic system, device or program."

"Computer" means "any electronic system or device that can store and manipulate information."

"Coupleable to" means " capable of being linked, joined or connected to."

"Coupled to" means "linked, joined or connected to."

## B.    Disputed Constructions

Resolution of the disputes in this case requires the court to decide first which specification

governs the claim construction questions.  The defendant argues that, during the prosecution of the '116 patent, the patentee represented that all of the applications that led to the '116 patent were continuations.  The Patent and Trademark Office ("PTO"), however, discovered that new matter had been added in one of the earlier applications.[2]  Subsequently, the patentee clarified that its first continuation application was actually a continuation-in-part application.  Nevertheless, based on the patentee's representations to the PTO, the defendant proposes that the court review only the specification of the '090 patent (together with the file histories that led to the '116 patent) as the relevant intrinsic evidence for claim construction.

The court is not persuaded.  The defendant cites no authority for this proposition, and what little authority exists runs counter to this argument.  For instance, courts in this district and others have held that "'determining whether a patentee introduced new matter during prosecution is not appropriate during claim construction.'"  *See Biax Corp. v. Intel Corp.*, 2007 WL 677132, at *4 (E.D. Tex. 2007) (Ward, J.) (quoting *Commw. Scientific Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 2006 WL 1233122, at *5 (E.D. Tex. 2006) (Davis, J.)) (citations omitted).  Accordingly, the court rejects the defendant's proposed limitation on the intrinsic evidence.  In construing the claims of the '116 patent, this court will refer to the specification of the patent as issued.

1.      **"Merchant-Specific Credit Value," "Merchant-Specific Credit Rate," "Merchant-Selected Credit Rate," "Credit Rate," and "Credit Value"**

Independent claim 14 requires "determining a merchant-specific credit value for the transactions from a merchant-specific credit rate and the purchase amount."  Claim 15, which depends from claim 14, requires that the credit value be "determined by multiplying a merchant-

---

[2]      Specifically, the PTO determined that the patentee had introduced new matter into the application that matured into U.S. Patent No. 5,117,355.

selected credit rate by the purchase amount of the transaction." The parties' principal dispute concerns the meaning of these terms.

The defendant proposes that "merchant-selected credit rate" means "a credit rate selected by a merchant, irrespective of any other merchant and independent of a central authority." The defendant further argues that "merchant-specific credit rate" should have the same construction as "merchant-selected credit rate." If, however, the court determines that "merchant-specific credit rate" means something different, then the defendant proposes "a credit rate selected or otherwise indicated by a merchant, irrespective of any other merchant and independent of a central authority." With respect to the term "merchant-specific credit value," the defendant proposes that it means "a credit value selected or otherwise indicated by a merchant, irrespective of any other merchant and independent of a central authority." The defendant also contends that the terms "credit rate" and "credit value" refer to the antecedent terms "merchant-selected credit rate" and "merchant-specific credit value," respectively. Therefore, according to the defendant, "credit rate" and "credit value" must have the same meaning as "merchant-selected credit rate" and "merchant-specific credit value," respectively. If the court determines otherwise, however, the defendant proposes that "credit value" means "a portion of a purchase amount that is to be credited to a consumer's account, regardless of how the transaction is paid for. The credit value is determined at the point of sale by applying a credit rate selected by that merchant irrespective of any other merchant and independent of a central authority, to the purchase amount of the transaction and is then transmitted to a central system." The defendant appears to agree with the plaintiff that "credit rate" means "a rate used along with a purchase amount to determine a credit value."

The plaintiff, on the other hand, proposes that "merchant-selected credit rate" means "a credit

8

rate selected by a particular merchant," "merchant-specific credit rate" means "a credit rate determined for a particular merchant," and "merchant-specific credit value" means "a credit value determined using either a merchant-specific credit rate or a merchant-selected credit rate." According to the plaintiff, "credit rate" means "a rate used along with a purchase amount to determine a credit value," and "credit value" means "a value determined in connection with point-of-sale transactions." The principal disputes are 1) whether a third party may set the credit value and/or credit rate, and 2) whether there are any limitations on how the credit value is determined.

### a.      Third Party Determination

In support of its proposed constructions that a third party may not set the credit value and/or credit rate, the defendant argues that the patentee defined "merchant-specific credit value" in the prosecution history by stating that "the salient point [is] that the merchant may select or otherwise indicate the desired credit value (in some claims, by reference to a 'credit rate')." Combined Reissue Declaration and Power of Attorney, February 15, 1996, at 2. In addition, the defendant argues that the patentee distinguished his invention over prior art by stating that the prior art "fails to disclose or suggest . . . the concept of permitting each of several merchants to select a merchant-specific rate . . . ." Response to Office Action, February 26, 1997, at 10. The defendant points to this statement and also contends that the Examiner used the terms "merchant-selected credit rate" and "merchant-specific credit rate" interchangeably when it issued an Interview Summary referring to "the limitation of 'merchant-*specific* credit rate' from Claim 15, . . ." even though Claim 15 actually used the phrase "merchant-*selected* credit rate." Interview Summary, March 12, 1998 (emphasis added). Finally, the defendant argues that the Examiner, in his Notice of Allowance, stated that "the prior art of record, neither singularly nor in combination, discloses a rebate system whereby a consumer receives

9

a cash rebate, based on the amount of purchases made and a credit rate that is determined by the merchant." Notice of Allowability, May 22, 1998, at 2.  Because the patentee did not respond to this notice, the defendant argues that the patentee acquiesced in the examiner's statement.

The plaintiff argues that, under the doctrine of claim differentiation, "merchant-specific credit rate" and "merchant-selected credit rate" cannot mean the same thing.  The plaintiff also argues that the specification does not require that the merchant actually assign the rate in all circumstances.  The plaintiff points to passages in the specification which state that the rate "may be selected" by the merchant and "the credit rate for one merchant is *preferably* selected by that merchant and not by any other merchant or the central system."  '116 patent, 1:39-42, 3:38-40 (emphasis added).  In addition, the plaintiff points to the prosecution history and urges that the applicant distinguished between "merchant-specific" and "merchant-selected."  *See* Response to Office Action, February 26, 1997, at 10-11.  Finally, the plaintiff argues the failure to respond to the notice of allowability does not represent a clear disavowal of claim scope.  *See* 37 C.F.R. § 1.104(e) (1998); *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005).

Although it is a close issue, application of the rules governing claim construction supports the plaintiff's proposed constructions.  It is a general principle of claim construction that different words in a claim have different meanings.  *Innova/Pure Water, Inc.*, 381 F.3d at 1119 ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.").  Without question, the two phrases "merchant-selected" and "merchant-specific" are different.  The former  connotes that it is the merchant who selects the applicable rates; the latter implies that, although the applicable rate is keyed to a particular merchant, a third party (or the merchant) may specify the rate.  Under

*Phillips*, the language of the claims supports the plaintiff's argument.

The court has also considered the claims in light of the specification.  As the plaintiff correctly notes, the written description does not equate the term "merchant-selected" with the term "merchant-specific."  Moreover, the specification explicitly states that the merchant "may" select the applicable rate.  The cited passages in the specification, although not conclusive, further support the plaintiff's proposed construction.

Finally, the court has examined the prosecution history.  There is no clear statement in the prosecution history in which the applicant explicitly defined "merchant-specific" to mean "merchant-selected."  To the contrary, the applicant stated that "[i]ndependent claim 14 includes the *slightly different* limitation of 'determining a *merchant-specific credit value* for the transaction' . . . ."  Response to Office Action, February 26, 1997, at 11 (emphasis added).  It does not appear that the applicant made a clear disavowal of claim scope and, therefore, the credit rate of claim 14 may be assigned by a third party.

### b.    Credit Value

Next, the court examines the term "credit value."  The defendant contends that the credit value must be 1) determined at the merchant location, 2) determined by multiplying the credit rate by the purchase amount, and 3) can be determined regardless of how the consumer pays for it.

### i.    Merchant Location

The defendant contends that the patentee disclaimed any system and method for determining credit value other than at the merchant's location in his appeal brief.  In that brief, the patentee stated that claims 1, 14, 22, and 35 "clearly recite electronic capture of . . . credit value at the merchant location and its electronic transmission to the central system . . . ."  Appeal Brief, June 12, 2006, at

13.

In reply, the plaintiff points out that the appeal brief also states that "[t]he prior art fails to disclose the electronic delivery of credit values *and/or* account numbers to a central system . . . ." Appeal Brief, June 12, 2006, at 18 (emphasis added).  According to the plaintiff, this does not require that the credit value be determined at the merchant location.

There is no clear disclaimer of claim scope.  The patentee chose to include this limitation in some claims, but not others.  For example, claims 1, 8, and 35 specifically require the credit value to be calculated at the merchant location while claims 22 and 31 do not require the credit value to be calculated at the merchant location.  Accordingly, this limitation should not be included in the construction of these terms because imposing this limitation would be redundant in some claims and, without a clear disclaimer, would be improper in the other claims.

### ii.      Multiplying Credit Rate by Purchase Amount

Next, the defendant contends that the only method for determining a credit value in the '090 specification is multiplying the credit rate by the purchase amount.  The defendant attempts to limit the intrinsic evidence to the specification of a different patent and to import a limitation from a preferred embodiment into the construction of a claim term.  Furthermore, dependent claim 15 states that "the credit value is determined by multiplying a merchant-selected credit rate by the purchase amount of the transaction."  Therefore, the court concludes that the term "credit value" is broader, standing alone, than the limitation in the dependent claim.  The proposed limitation is rejected.

### iii.      Determination Regardless of How a Product is Paid For

Finally, the defendant contends that the inventor's notes disclaimed any system which is dependent on the form of payment.  Defendant's Responsive Claim Construction Brief, Ex. B., at

PS 11339.  The defendant also cites to the specification which states "consumers build up cash value by buying products from participating merchants independent of how that product is paid for . . . ." '116 patent, 2:22-24.   Again, the defendant attempts to import a limitation from a preferred embodiment.  The court rejects this limitation.

### c.   Constructions

Based on the foregoing discussion, the court issues the following constructions:

"Merchant-selected credit rate" means "a credit rate selected by a particular merchant."

"Merchant-specific credit rate" means "a credit rate associated with a particular merchant."

"Merchant-specific credit value" means "a credit value associated with a particular merchant."

"Credit rate" means "a rate used along with a purchase amount to determine a credit value."

The term "credit value" has been defined in the prosecution history as proposed by the plaintiff.  *See* Response to Office Action, February 26, 1997, at 3.  "Credit value" means "a value determined in connection with point-of-sale transactions."

### 2.   "Bill Value"

Next, the parties dispute the term "bill value."  The term "bill value" appears in claims 19 and 30.  The plaintiff contends that the term means "a value related to a credit value that is billed to a merchant's account or to a third party."  The defendant proposes "a value equal to one or more credit values that is to be billed to a merchant or third party."  The dispute appears to be whether the bill value must *equal* one or more credit values.

In support of its proposed construction, the defendant cites to the '090 specification and a sentence in the '116 specification which states that the "bill segment is then similarly incremented

13

in relation to the amount of the credit value data received from that merchant." '116 patent, 4:42-45. This passage does not clearly limit the term in the manner the defendant proposes. Accordingly, the court adopts the plaintiff's proposed construction.

### 3. "Cash Value"

The next term is "cash value." The plaintiff argues that this term means "a value measurable in dollars (or other currency)." The defendant proposes "a value accumulated in an account that is (i) personal to each consumer, (ii) determined by accumulating credit values, (iii) to which the consumer receives access and (iv) measured in dollars transferred to the consumer directly or placed in the consumer's account."

The defendant correctly derives its proposed construction from the prosecution history. There, the patentee explicitly defined "cash value." Response to Office Action, February 26, 1997, at 3. In addition, the defendant points out that its proposed construction is the exact same construction that the plaintiff offered in a prior case in this Court. *See* Defendant's Responsive Claim Construction Brief, Ex. BB. The plaintiff, on the other hand, argues that the defendant's proposed definition incorporates limitations from other portions of the claims and is unnecessarily cumbersome.

The court rejects the plaintiff's arguments. The patentee defined this term in the file history, and, therefore, the court adopts the defendant's proposed construction.

### 4. "Consumer" and "Consumer Account"

The plaintiff argues that these terms do not need construction. Alternatively, the plaintiff proposes that "consumer" means "a person or entity that acquires or uses goods or services" and that "consumer account" means "an account associated with a consumer." The defendant argues that

14

that "consumer" means "an individual that purchases goods or services" and that "consumer account" means "an account unique to an individual."  The dispute is whether the terms are limited to an individual or whether it includes businesses and organizations.

The defendant contends that the term is limited to an individual because the specification refers to a consumer's Social Security number and birth date.  *See* '116 patent, 3:5-8.  According to the defendant, an entity cannot have Social Security numbers or birth dates.

The court rejects the attempt to limit the construction to the preferred embodiment.  The court construes "consumer" to mean "a person or entity that acquires goods or services for direct use or ownership rather than for resale or use in production and manufacturing."  The term "consumer account" needs no additional construction.

### 5.    "Account Number Unique to the Consumer," "Consumer Account Number," and "Unique Account Number"

The plaintiff contends that the terms do not need construction.  In the alternative, the plaintiff proposes that the terms, except for "unique account number" mean "an identifying number for a consumer account."  The defendant argues that all the terms mean "an identifying number that is not shared by any other consumer, and which is additional to, or separate from, any number associated with a credit card or debit card used to pay for a transaction."  The disputes are whether the account number can be shared and whether the number can be the same as a credit card account number.

The defendant argues that Social Security numbers can be used as account numbers and, therefore, the number cannot be shared by another customer.  The defendant also argues that the account number cannot be a number associated with a credit card because the accumulation of cash

value may not be limited to how the product is paid for.  *See* '116 patent, claim 18.[3]

The defendant attempts to limit the terms to a preferred embodiment.  Aside from the term "consumer," which the court has already construed, these terms may be understood according to their plain and ordinary meaning.  No further construction is needed.

### 6. "Accumulating"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "increasing in number or quantity."  The defendant proposes "increasing gradually in quantity or number."  The dispute is whether "accumulating" must be done "gradually."

Although the defendant cites to a dictionary in support of its proposed construction, the court concludes that in the context of this patent, the term "accumulate" means "to increase in quantity or number."  The court, therefore, adopts the plaintiff's construction.

### 7. "Consumer Cash Value Accumulation"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "accumulation of cash value to a consumer."  The defendant proposes "building up of cash value by a consumer by buying products from participating merchants, independent of how the products are paid for."  The court incorporates by reference its prior constructions of "consumer" and "cash value."  No further construction is required.

### 8. "Electronically Providing"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "furnishing or providing data or information using an electronic system or device."  The defendant argues that the term means "electronically transmitting."

------

[3] The defendant also cites to portions of the '090 patent specification.

16

According to the defendant, in the context of the patent, information is transmitted to a central system.  The plaintiff argues that nothing in the intrinsic evidence requires that "providing" necessarily includes "transmitting."   The plaintiff also argues, that under the doctrine of claim differentiation, "electronically providing" cannot mean "electronically transmitting" because "electronically transmitted" is used in a different claim.  *See* '116 patent, claim 16.

The plaintiff has the better argument.  Accordingly, the court declines to construe this term, other than to reject the defendant's construction that "providing" requires "transmission."

### 9.    "In Relation to the Credit Value"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "having a relationship to the credit value."  The defendant proposes "having a one-to-one correspondence or other desired relationship to the credit value."

The defendant argues that the specification describes a numerical relationship between cash value and credit value.  *See* '116 patent, 4:37-41.  Although the specification describes such a relationship, the court is not persuaded that this claim term needs construction.   This term may be understood according to its plain and ordinary meaning.  No further construction is necessary.

### 10.    "Merchant"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "a provider of goods or services."  The defendant proposes "the operator of a retail business."

The defendant argues that there is a difference between a merchant and manufacturer.  According to the defendant, the plaintiff's proposed construction would include a manufacturer.  The plaintiff contends that the defendant's proposed construction would limit "merchants" to those who

sell retail "goods," but not services.

In the context of the patented invention, both parties make valid arguments.  The court accordingly construes the term to mean "a retail provider of goods or services."

**11.    "Point-of-Sale," "Point-of-Sale Transactions," and "Point-of-Sale Terminal"**

The plaintiff argues that these terms do not need any construction.  In the alternative, the plaintiff proposes that "point-of-sale" means "any place where a consumer enters a transaction with a merchant," "point-of-sale transaction" means "transactions between a consumer and a merchant," and "point-of-sale terminal" means "an electronic device that is used to enter information in connection with a transaction."  The defendant proposes that "point-of-sale" means "the place in a store at which goods are paid for," "point-of-sale transaction" means "transactions that take place in a store at which goods are paid for," and "point-of-sale terminal" means "an electronic device that is located in a store and is used to enter information in connection with a transaction."

The principal dispute is whether the constructions should be limited to a store or can involve transactions occurring over the internet, telephone, or mail.  The defendant cites to an extrinsic dictionary definition in support of its construction.

After considering the parties' arguments, the court construes "point-of-sale" to mean "the physical location where a consumer enters a sales transaction with a merchant" and "point-of-sale transaction" to mean "the sales transaction occurring at the point of sale."  "Point-of-sale terminal" means "an electronic device at the point-of-sale for entering a point of sale transaction."

**12.    "Selective Access"**

The plaintiff argues that this term does not need construction.  In the alternative, the plaintiff

18

proposes "access pursuant to some criteria."  The defendant proposes "allowing access from or through a central station, to an access account, which is separate from the consumer account, and periodically allowing selected consumers to obtain from the access account, a portion of cash value which has been transferred from the consumer account to the access account."

The defendant argues that the description in the '090 patent specification uses the language in its proposed construction.  In addition, the defendant argues that the specification is not broad enough to allow a consumer to have direct access to his account, and, therefore, the plaintiff's construction is too broad.

The court has considered the parties' constructions.  The court is not persuaded that the defendant's limitations are proper.  The court further concludes that this term needs no additional construction.

### 13.    "Merchant Account"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "an account associated with a merchant."  The defendant proposes "a retail establishment's account that accumulates credit values as a bill value for that retail establishment."

The court incorporates by reference its construction of "merchant" and holds that no further construction is necessary.

### 14.    "Accumulator"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "a system, device or program that performs the operation of accumulating."  The defendant proposes "a register used for logic or arithmetic to accumulate a sum."

The defendant cites to the Microsoft Computer Dictionary in support of its proposed

construction.  The plaintiff disputes the propriety of the "register" limitation.

Claim 31, in relevant part, states "an accumulator associated with the computer, coupled to the memory and to the processor, and structures to . . . ."  An "accumulator," therefore, is not a program, but is a device that can be coupled to the memory and to the processor.  The court construes the term to mean "a device that performs the operation of accumulating."

### 15.    "Electronic Communications Network"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "a network in which data or information is communicated electronically."  The defendant proposes "a system of electronic circuits, electronic components, electronic devices, electronic equipment, computers, transmission channels, and related sources which are interconnected together to exchange information."

After considering the parties' positions, the court concludes that this term does not have a technical definition and no construction is necessary.

### 16.    "Indexed Memory Sized and Structured to Store Cash Values for a Multitude of Consumer Accounts"

The plaintiff argues that this term does not need further construction.  In the alternative, the plaintiff proposes "electronic memory sized and configured to store cash values for a multitude of consumer accounts."  The defendant proposes "a computer memory associated with an index.  The index includes a listing of keywords and/or associated data that point to a location of more comprehensive information within the computer memory.  The computer memory is sized and configured to store cash values for a multitude of consumer accounts."

Unlike the previous term, this term requires construction.  The plaintiff's proposal reads out

the requirement that the memory be indexed.  The court therefore defines this term to mean "a computer memory associated with an index that is sized and configured to store cash values for a multitude of consumer accounts."

## V.      Conclusion

The court adopts the constructions set forth in this opinion for the disputed terms of the '116 patent.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the court.

 SIGNED this 14th day of September, 2007.


CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE